IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.P. PINO & ASSOCIATES, INC., et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UTICA MUTUAL INSURANCE CO., | : | No. 11-3962 |
| Defendant. | : | |

MEMORANDUM

Schiller, J.                                                                                                                                                                                                                                                                    July 3, 2012

      This is an insurance dispute. Plaintiffs A.P. Pino & Associates, Inc. ("APA") and Gerald A. Pino sued Defendant Utica Mutual Insurance Company ("Utica"), seeking: (1) a declaratory judgment that Utica has a duty to defend and indemnify Pino for claims in an underlying action; (2) reformation of the policy to provide the requested coverage; and (3) a judgment of bad faith. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court grants Defendant's motion and denies Plaintiffs' motion.

I.     BACKGROUND

    A.     The Utica Policy

      APA sells life insurance for several companies. (Pls.' Mem. of Law in Supp. of Mot. for Summ. J. [Pls.' Mem.] at 3.) Pino is a partial owner of APA and has worked for APA since 1975. (Pls.' Statement of Undisputed Facts in Supp. of Pls.' Mot. for Summ. J. [Pls.' SOF] ¶ 4; Pls.' Mem. at 3.) APA is the named insured on two Life Insurance Agents and Brokers Errors and Omissions Liability policies issued by Utica for the policy periods of October 15, 2009 to October 15, 2010 and

October 15, 2010 to October 15, 2011. (Pls.' SOF ¶ 2.) The policies contain a retroactive date of October 15, 2009, and state that they do not cover loss occurring from acts that took place before the retroactive date. (Pls.' Mot. for Summ. J. [Pls.' Mot.] Ex. C [Utica Policy, 10/15/2009 to 10/15/2010]; Def.'s Mot. Ex. D [Utica Policy, 10/15/2010 to 10/15/2011].)

Prior to seeking coverage by Utica, Pino was insured under an errors and omissions policy issued by NAPA/Scottsdale Insurance Company, with policy periods of June 1, 2008 to June 1, 2009 and June 1, 2009 to June 1, 2010. (Pls.' SOF ¶ 5; Pls.' Mem. at 3.) NAPA/Scottsdale provided Pino with an insurance policy that listed Pino, and not APA, as the named insured. (Pls.' SOF ¶ 6.) At that time, Pino was the only sales agent at APA and only needed an individual errors and omissions insurance policy for himself. (Pls.' Mem. at 4.) Because Pino intended to expand and add additional producers for the agency, he needed to expand insurance to cover all APA producers. (Pls.' SOF ¶ 7; Pls.' Mem. at 4.) Pino understood that NAPA/Scottsdale only insured individuals and not agencies, so he sought a different company to cover APA as an agency. (Pls.' SOF ¶ 6; Def.'s Mot. for Summ. J. [Def.'s Mot.] Ex. L [Pino Dep.] at 23, 74.)

Pino was interested in Utica in part because of its prior acts coverage, which is subject to underwriting approval. (Pls.' SOF ¶ 8; Def.'s Resp. to Pls.' SOF [Def.'s Disputed SOF] ¶ 8.) Utica determines applicability for prior acts coverage and whether to insert a retroactive date in an insurance policy based on whether the insured is a new business entity. (Def.'s Mot. Ex. M [Griffiths Dep.] at 36, 98-99; Pls.' Mem. at 3; Pls.' SOF ¶¶ 15-17; Def.'s Disputed SOF ¶¶ 15-17.) Utica treats a business as a new entity based on the business's insurance coverage history. (Pls.' Mem. at 3; Pls.' SOF ¶¶ 15-17; Def.'s Disputed SOF ¶¶ 15-17.) Pino explained to a Utica representative that he had been insured by NAPA/Scottsdale but that he was seeking coverage for additional APA producers.

2

(Pls.' SOF ¶ 12; Pino Dep. at 74-75.) In the APA application for Utica insurance, Pino stated that NAPA/Scottsdale was the agency's error and omissions carrier from June 1, 2009 to June 1, 2010. (Pls.' SOF ¶ 18; Pl.'s Mot. Ex. E [APA Application].) Pino failed to answer whether the agency "had not had Errors and Omissions coverage for the last (3) years or have had a gap in coverage." (APA Application.) He selected October 15, 2009 as the desired effective date for the Utica policy. (*Id.*) As a result of the lack of prior insurance coverage for APA, Utica's underwriter Rebecca Griffiths treated APA as a new business entity throughout Utica's insurance application process and inserted a retroactive date of October 15, 2009 in the insurance policy. (Pls.' SOF ¶¶ 15, 20; Utica Policy, 10/15/2009 to 10/15/2010.)

It is disputed whether Griffiths explained the import of the retroactive date to Pino, but the two insurance policies, the two coverage proposals, and the two sets of terms and conditions, all of which Pino signed, clearly and repeatedly state the retroactive date and its effect. (*Id.*; Utica Policy, 10/15/2010 to 10/15/2011; Def.'s Mot. Ex. F [Utica Coverage Proposal, 10/9/2009]; Def.'s Mot. Ex. G [Utica Coverage Proposal, 8/10/2010]; Def.'s Mot. Ex. H [Utica Terms and Conditions, 10/9/2009]; Def.'s Mot. Ex. I [Utica Terms and Conditions, 8/10/2010].) The two-page declarations sheet states under "Retroactive Date": "This insurance does not apply to loss, whenever occurring, from 'wrongful acts' which took place before the Retroactive Date, if any, shown below: 10/15/09." (Utica Policy, 10/15/2009 to 10/15/2010.) On the same declarations sheet, the first paragraph under the description of the insurance policy states:

> The policy, subject to its terms and conditions, provides full prior acts coverage if no Retroactive Date is entered in the Declarations. If a Retroactive Date is entered in the Declarations, the policy will not apply to loss from "wrongful acts" which took place before the Retroactive Date. The policy will not apply to loss from "wrongful acts" which take place after the expiration of the policy period.

(*Id.*) The coverage proposal also specifies a retroactive date of October 15, 2009. (Utica Coverage Proposal, 10/9/2009.) Terms and conditions are attached to the coverage proposal, which consist of three paragraphs, the second of which states:

> *** The above proposal is for a policy which will contain a retroactive date. This means that the policy will apply only to those claims first made during the policy period that arise out of negligent acts, errors or omissions which occur subsequent to the retroactive date. The retro credit will diminish on next year's renewal.

(Utica Terms and Conditions, 10/9/2009.)

Pino testified that he signed the insurance policies, coverage proposals, and terms and conditions, but that he did not read them because "once a policy is explained to me, I don't typically read all of the print." (Pino Dep. 101; Pls.' Mem. at 10-11.) He said that he did not read the retroactive date language, nor would he have understood the language had he read it. (Pls.' Mem. at 11; Pino Dep. at 102, 104.)

### B. The Venezia Action

In November 2010, Frank J. Venezia filed an action (the "Venezia Action") against APA and Pino based on Pino's professional advice regarding the termination and purchase of Venezia's life insurance. (Pls.' SOF ¶ 1; Pls.' Mem. at 1.) Venezia asserts claims of negligence, professional negligence, negligent misrepresentation, breach of contract, and Unfair Trade Practices and Consumer Protection Law, and he alleges that Pino failed to properly advise him of the tax implications associated with the transfer of insurance coverage. (Pls.' Mem. at 2.) Pino had first approached Venezia regarding life insurance coverage in Spring 2009 and explained the process of a cash surrender to effectuate a transfer in insurance coverage. (Compl. Ex. A [Venezia Compl.].) By May 19, 2009, Venezia had finalized the purchase of new life insurance contracts, but as a result,

Venezia had outstanding loans against his prior life insurance policies. (*Id.*) In January 2010, Venezia's prior insurer issued a tax form indicating taxable income to Venezia, generating a tax liability of $79,900. (*Id.*) Venezia first contacted Pino regarding the issue in early 2010, and he filed the lawsuit against APA and Pino on November 24, 2010. (Pls.' Mem. at 2; Pls.' SOF ¶ 2.)

Utica has denied coverage to Plaintiffs for the Venezia Action because the "wrongful acts" alleged in the complaint occurred before the October 15, 2009 retroactive date of the Utica policies. (Pl.'s SOF ¶ 3.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

A court must apply the same standards to cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987); *see also St. Paul Fire & Marine Ins. Co. v. Primavera Software, Inc.*, Civ. A. No. 09-3908, 2011 WL 3438077, at *3 (E.D. Pa. Aug. 5, 2011).

III. **DISCUSSION**

Utica denied coverage because the wrongful acts alleged in the Venezia Action occurred prior to the policies' retroactive date of October 15, 2009. (Def.'s Mot. ¶ 5; Def.'s Mot. Ex. 5 [Coverage Denial Letter, 12/7/2010].) Nonetheless, Plaintiffs argue that Utica has a duty to defend and indemnify APA and Pino in the Venezia Action based on APA and Pino's reasonable expectations that the Utica policies provided prior acts coverage and that the policies should be reformed to conform to the intention of APA and Pino at the time APA entered into the agreement with Utica. Plaintiffs also allege that Utica acted in bad faith in its dealings with APA and Pino.

Utica counters that Plaintiffs are unable to avoid the effect of the policy language because the policy language is clear and unambiguous and there was no misrepresentation about the content of the policy terms. (Br. in Supp. of Def.'s Mot. for Summ. J. [Def.'s Br.] at 7-9.) Furthermore, Utica argues that reformation is unavailable as a remedy based on the Plaintiffs' unilateral mistake, which was not Utica's fault. (*Id.* at 9-14.)

A. **General Pennsylvania Insurance Contract Interpretation**

Pennsylvania law, which governs the interpretation of the Utica insurance policy, "provides several well-settled principles governing the interpretation of insurance policies." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). First, the task of interpreting the policy is generally performed by the court, rather than the jury, and the goal of that task is to ascertain the

6

intent of the parties through the contract's language. *Id*. (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Second, when "an insurance policy provision is ambiguous, it is to be 'construed against the insurer and in favor of the insured.'" *J.C. Penney Life Ins. Co.*, 393 F.3d at 363 (quoting *McMillan v. State Mut. Life Assur. Co. of Am.*, 922 F.2d 1073, 1075 (3d Cir. 1990)). A provision is ambiguous when the language, viewed in the context of the entire policy, is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (internal quotation marks omitted). Third, when an insurance contract's language is unambiguous, the court must enforce the language and avoid creating ambiguities where none exist. *Id.* "Thus, '[w]here the policy contains definitions for the words contained therein, the court will apply those definitions in interpreting the policy.'" *Id.* (quoting *Monti v. Rockwood Ins. Co.*, 450 A.2d 24, 25 (Pa. Super. Ct. 1982)). Courts should not, "under the guise of judicial interpretation, . . . expand the coverage beyond that as provided in the policy." *Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984).

The policy language setting out the retroactive date is clear and unambiguous. The declarations page consists of two pages and states under "Retroactive Date" that there is no coverage for "loss, whenever occurring, from 'wrongful acts' which took place before the Retroactive Date, if any, shown below: 10/15/09." (Utica Policy, 10/15/2009 to 10/15/2010.) The declarations page also states that if a retroactive date is listed then "the policy will not apply to loss from 'wrongful acts' which took place before the Retroactive Date. The policy will not apply to loss from 'wrongful acts' which take place after the expiration of the policy period." (*Id.*) The coverage proposal also notes the retroactive date, and the attached terms and conditions consist of three short paragraphs, one of which states, "The above proposal is for a policy which will contain a retroactive date. This

7

means that the policy will apply only to those claims first made during the policy period that arise out of negligent acts, errors or omissions which occur subsequent to the retroactive date." (Utica Terms and Conditions, 10/9/2009.) The Court finds that the retroactive date language is clear and unambiguous, and the Court may not expand coverage beyond the clear terms of the policy. *See Guardian Life Ins. Co. of Am.*, 479 A.2d 949 at 953. Thus, Plaintiffs are only entitled to coverage for acts that took place after October 15, 2009, the clearly defined retroactive date. The alleged conduct forming the basis for the Venezia Action, however, occurred in Spring 2009, and for that reason, Utica denied coverage. (Venezia Compl.; Coverage Denial Letter, 12/7/2010.)

However, Pino contends that he did not read the insurance policies, coverage proposals, and terms and conditions because the policy was explained to him. (Pino Dep. at 101; Pls.' Mem. at 10-11.) Furthermore, he states that even had he read the retroactive date language, he would not have understood it. (Pls.' Mem. at 11; Pino Dep. at 102, 104.) When a "policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." *Standard Venetian Blind Co.*, 469 A.2d at 567. To the contrary, if a policy is "plain and free of ambiguity, and could have been readily comprehended by [an insured] had he chosen to read them," then the parties are bound by the signed agreement. *Id.* at 566 (internal quotation marks omitted). Because the court finds the policy language is readily comprehensible, Plaintiffs cannot avoid the effect of the clear and unambiguous language of the policy based on Pino's failure to read the policy.

**B.      Reasonable Expectations Doctrine**

Pennsylvania courts recognize that the doctrine of reasonable expectations applies in insurance transactions. The doctrine provides that "courts should look to the reasonable expectations of the insured when considering the extent of coverage." *Smith v. Cont'l Cas. Co.*, 347 F. App'x 812, 814 n.1 (3d Cir. 2009) (citing *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 925 (Pa. 1987)). In *Tonkovic*, the court emphasized that when an "individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy." *Tonkovic*, 521 A.2d at 925. Consequently, "[c]ourts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled." *Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978) (finding that the insurance industry's use of "lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies . . . forces the insurance consumer to rely upon the oral representations of the insurance agent").

The reasonable expectations doctrine, however, is to be "applied in very limited circumstances." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 n.8 (Pa. 1999). It "generally applies only to unsophisticated non-commercial insureds, and only to protect such insureds from "policy terms not readily apparent and from insurer deception." *Smith*, 347 F. App'x at 814 n.1. Plaintiffs do not contend that the retroactive date language was ambiguous. Rather, they contend that Pino clearly advised Utica that he wanted insurance coverage from Utica because of its prior acts coverage and that Utica never informed Plaintiffs of the retroactive date in the policy that precluded prior acts coverage. (Pls.' Mem. at 14-17.) This runs contrary to the clear language

of the retroactive date in the multiple insurance policies, coverage proposals, and terms and conditions that Pino signed. Plaintiffs also assert that Utica mistakenly treated APA as a new business entity when it had in fact been in continuous operation for over thirty years, which resulted in Utica's denial of prior acts coverage in the policy. (*Id.* at 15-16.) This ignores the fact that Utica only provides prior acts coverage to insureds with proof of continuous insurance coverage, and APA lacked any prior insurance coverage and was therefore ineligible for prior acts coverage. While Pino indicated that he had maintained prior insurance coverage under an individual policy, this is irrelevant because APA is the insured in the Utica policy at issue in this case. Pino also failed to provide Utica any proof of this coverage. Plaintiffs argue that the reasonable expectations doctrine mandates that the Court look at Plaintiffs' reasonable expectations at the time APA entered into the contract, yet any expectation that APA would be provided with prior acts coverage—despite APA's ineligibility for such coverage—and the clear, unambiguous, and conspicuous language in the policy precluding such coverage, is patently unreasonable.

      Finally, the Court notes that Plaintiffs are not the type of "unsophisticated non-commercial insureds" typically protected by the reasonable expectations doctrine. *See Smith*, 347 F. App'x at 814 n.1.; *see also Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (noting that "[a]bsent sufficient justification, . . . an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous"). Pino is an insurance agent who has been in the insurance business for over thirty years, and APA has been in continuous operation since the 1970s. Plaintiffs fail to present any evidence that Utica indicated APA would receive prior acts coverage or that Utica modified any coverage provision after Griffiths discussed the policy with Pino. Thus the Court finds that the reasonable expectations doctrine does

not apply in this case and Utica did not breach the insurance policies by denying coverage to Plaintiffs for the Venezia Action.

**C.     Reformation of Policy**

Plaintiffs contend that the Utica policies should be reformed to provide the prior acts coverage that Plaintiffs requested at the time the parties entered into the contract based on Utica's mistaken view that APA was a new business entity. (Pls.' Mem. at 17-18.) Plaintiffs argue that the Court should reform the policy to reflect the facts that were known to the parties at the time the parties entered into their agreement. (*Id.*)

Pennsylvania law provides for reformation of contracts under certain circumstances when there have been mutual or unilateral mistakes. *Regions Mortg., Inc. v. Muthler*, 844 A.2d 580, 582 (Pa. Super. Ct. 2004). To obtain reformation of a contract based on mutual mistake, the moving party must show evidence of "mutual mistake by evidence that is clear, precise and convincing," which requires "evidence by two witnesses or by one witness and corroborating circumstances." *Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.*, 263 A.2d 448, 456 (Pa. 1970). In order to obtain reformation of a contract based on unilateral mistake, a party must demonstrate either "mistake on one side and fraud on the other," or "irrespective of active fraud, if the other party knows or has good reason to know of the unilateral mistake." *McFadden v. Am. Oil Co.*, 257 A.2d 283, 289 (Pa. Super. Ct. 1969). "Reformation presupposes that a valid contract between the parties was created but, for some reason, was not properly reflected in the instrument that memorializes the agreement." *H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235, 1239 (3d Cir. 1980). However, reformation is an equitable remedy that is sparingly granted. *Id.*

Plaintiffs assert a mutual mistake exists because APA was mistakenly treated as a new

business entity. (Pls.' Mem. at 17-18.) "A party who seeks reformation on the ground of mutual mistake must establish in the clearest manner that the intention proffered as the basis for reformation of the [contract] existed and continued concurrently in the minds of the parties down to the time of the execution of the [contract]." *Dudash v. Dudash*, 460 A.2d 323, 326-27 (Pa. 1983). The evidence establishes that Utica treated APA as a new business entity—and therefore denied it prior acts coverage—because of its lack of prior insurance coverage, not because of any mistaken view that APA was newly operating as a business. As Plaintiffs have failed to provide any proof of prior insurance coverage for APA, there was no mutual mistake as to whether APA should have been treated as a new business entity. Furthermore, there was no mistake on Utica's part as to whether it should insert a retroactive date, given APA's lack of prior insurance coverage.

Plaintiffs also argue that there was a unilateral mistake because of Utica's "underwriter's negligence in failing to clarify her confusion over" whether APA was a new business entity. (Pl.'s Mem. at 18.) As already discussed, due to APA's lack of evidence of any prior insurance coverage, Utica correctly qualified APA as a new business entity for the purpose of insurance coverage and provided APA with a retroactive date. While Plaintiffs may have been unilaterally mistaken that APA would receive prior acts coverage, Plaintiffs have not presented a scintillla of evidence that Utica engaged in either active fraud or had good reason to know of Plaintiffs' unilateral mistake, thereby precluding reformation of the policy. *See McFadden*, 257 A.2d at 288 ("Generally if a mistake is not mutual, but unilateral, and is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, it affords no basis for relief.").

12

### D.     Bad Faith Claim

Plaintiffs also allege that Utica acted in bad faith in refusing to defend and indemnify them for the claims asserted in the Venezia Action. (Compl. ¶ 49.) It is unclear whether Plaintiffs bring this claim based on a contractual duty to act in good faith or under Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371, but the Court finds it fails under both.

Under Pennsylvania law, insurers have a contractual duty to act in good faith. An insurance contract implies a duty of good faith and fair dealing. *Birth Ctr. v. St. Paul Cos.*, 787 A.2d 376, 379 (Pa. 2001). This duty is implied because the "Pennsylvania Supreme Court has recognized that the 'utmost fair dealing should characterize the transactions between an insurance company and the insured.'" *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 408 (W.D. Pa. 2011) (quoting *Dercoli v. Pa. Nat'l Mut. Ins. Co.*, 554 A.2d 906, 908 (Pa. 1989)). In the insurance context, "bad faith" has a "universally acknowledged meaning," which encompasses "any frivolous or unfounded refusal to pay proceeds of a policy . . . [which] imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1108-09 (E.D. Pa. 1992) (internal quotation marks omitted). Plaintiffs failed to produce any evidence to support their claim for breach of the contractual duty of good faith and fair dealing. Having concluded that Utica did not breach its contract with Plaintiffs by failing to defend or indemnify them in the Venezia Action, the Court cannot sustain Plaintiffs' claim of bad faith based solely on that purported breach.

To prevail on a bad faith claim under Pennsylvania's bad faith statute, the insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the

insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505 (3d Cir. 2004) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). Since the essence of a bad faith claim is the denial of benefits without good reason, an insurer is entitled to summary judgment if it can show a reasonable basis for its actions. *See Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa.1998). As the Court has already concluded that Utica did not breach its insurance policy with APA by failing to defend and indemnify Plaintiffs in the Venezia Action, Utica had a reasonable basis in refusing to provide coverage. Thus, Plaintiffs cannot make out a claim of bad faith by Utica.

### IV.   CONCLUSION

In light of the foregoing, the Court finds no basis on which Plaintiffs may maintain any of their causes of action against Utica. Accordingly, Defendant's motion for summary judgment is granted and Plaintiffs' motion for summary judgment is denied. An appropriate Order will be docketed separately.