IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.P. PINO & ASSOCIATES, INC., et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UTICA MUTUAL INSURANCE CO., | : | No. 11-3962 |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                   **August 9, 2012**

Plaintiffs A.P. Pino & Associates, Inc. ("APA") and Gerald A. Pino sued Defendant Utica Mutual Insurance Company ("Utica"), seeking: (1) a declaratory judgment that Utica has a duty to defend and indemnify Pino for claims in an underlying action; (2) reformation of the policy to provide the requested coverage; and (3) a judgment of bad faith. Before the Court is Plaintiffs' motion for reconsideration of the Court's Order dated July 3, 2012, granting Defendant's motion for summary judgment. After filing the motion for reconsideration, Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Third Circuit. The Third Circuit subsequently stayed the appeal pending disposition of the instant motion. For the reasons set out below, the Court will deny Plaintiff's motion.

**I.     BACKGROUND**

The facts of this case were stated in the Court's Memorandum dated July 3, 2012. *A.P. Pino & Assocs., Inc. v. Utica Mut. Ins. Co.*, Civ. A. No. 11-3962, 2012 WL 2567093, at *1-3 (E.D. Pa. July 3, 2012). The Court will summarize and restate those facts necessary to its determination of the motion for reconsideration.

APA sells life insurance for several companies, and Pino has worked for APA since 1975. (Pls.' Mem. of Law in Supp. of Mot. for Summ. J. [Pls.' Summ. J. Mem.] at 3; Pls.' Statement of Undisputed Facts in Supp. of Pls.' Mot. for Summ. J. [Pls.' SOF] ¶ 4.) Prior to seeking coverage by Utica, Pino was insured as an individual under an errors and omissions policy issued by NAPA/Scottsdale Insurance Company, which listed Pino as the named insured. (Pls.' SOF ¶¶ 5-6; Pls.' Summ. J. Mem. at 3.) Because APA planned to expand and to add producers to the agency, Pino sought out a different insurance company to cover APA as an agency as opposed to Pino individually. (Pls.' SOF ¶ 6; Def.'s Mot. for Summ. J. [Def.'s Mot.] Ex. L [Pino Dep.] at 23, 74.)

Plaintiffs ultimately selected Utica as APA's errors and omissions liability insurer. Pino stated that he selected Utica in part because of its prior acts coverage. (Pls.' SOF ¶ 8.) APA is listed as the name insured on the two Life Insurance Agents and Brokers Errors and Omissions Liability policies issued by Utica, with policy periods of October 15, 2009 to October 15, 2010 and October 15, 2010 to October 15, 2011. (Pls.' SOF ¶ 2.) The policies contain a retroactive date of October 15, 2009, and state that they do not cover loss occurring from acts that took place before the retroactive date. (Pls.' Mot. for Summ. J. [Pls.' Mot.] Ex. C [Utica Policy, 10/15/2009 to 10/15/2010]; Def.'s Mot. Ex. D [Utica Policy, 10/15/2010 to 10/15/2011].)

At the heart of the instant motion is whether APA should have included the retroactive date in the Utica policies. Plaintiffs contend—as they did previously—that Utica mistakenly inserted a retroactive date, not understanding that APA was not a "new business entity" because it had in fact been in continuous operation for over thirty years. (*See* Pls.' Mot. for Recons. at 2-6.) The Court found Plaintiffs' focus on whether or not APA was a new business entity misplaced because Utica determines whether to insert a retroactive date not based on whether an insured is a "new entity," but

rather on whether the insured party had prior insurance coverage. (Pls.' SOF ¶¶ 15-17; Def.'s Resp. to Pls.' SOF [Def.'s Disputed SOF] ¶¶ 15-17.) Although Pino had prior individual insurance coverage, as he stated on Plaintiffs' application for Utica insurance coverage, APA had no prior insurance coverage, and consequently, Utica included a retroactive date in APA's policies. (Pls.' SOF ¶ 18; Pl.'s Mot. Ex. E [APA Application]; Utica Policy, 10/15/2009 to 10/15/2010.)

## II.   STANDARD OF REVIEW

A motion for reconsideration seeks to correct manifest errors of law or fact or to present newly discovered evidence. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Such a motion may be granted only "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of. *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). Motions for reconsideration are to be granted sparingly. *Cont'l Cas. Co. v. Diversified Indus.*, 884 F. Supp. 937, 943 (E.D. Pa.1995).

## III.   DISCUSSION

In their motion for reconsideration, Plaintiffs contend that the Court misread the evidence in the record as to whether Utica should have inserted a retroactive date in the policies, improperly dismissed Plaintiffs' argument regarding their reasonable expectations of coverage, and misapplied the evidence and law as to reformation of the policy. (Pls.' Mot. for Recons. at 2, 5, 7, and 11.) To

support their contention, Plaintiffs simply reargue what they have already argued in their summary judgment briefs. This falls far short of demonstrating one of the three grounds for granting a motion for reconsideration set out by the Third Circuit in *Max's Seafood*. A motion for reconsideration "does not allow a litigant a 'second bite at the apple.'" *Schutter v. Herskowitz*, Civ. A. No. 07-3823, 2008 WL 3911050, at *2 (E.D. Pa. Aug. 22, 2008) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)). Yet this is precisely what Plaintiffs are bobbing for by reiterating the core of the same arguments made at summary judgment.

Plaintiffs continue to assert that Utica improperly considered APA to be a new business entity and consequently inserted a retroactive date in the policy. (*Id.* at 2-5.) They also dispute the Court's finding in its Memorandum that Pino failed to provide Utica with proof of APA's prior insurance coverage. (Pls.' Mot. for Recons. at 6.) Plaintiffs cite to their application for Utica insurance, in which Pino disclosed that "he was previously insured," and Pino's deposition testimony that he provided Certificates of Insurance for "his prior years' coverage." (*Id.* at 6.) The Court recognized in its July 3, 2012 Memorandum that Pino was previously covered by an individual insurance policy, but concluded that "this is irrelevant because APA is the insured in the Utica policy at issue in this case." *A.P. Pino & Assocs.*, 2012 WL 2567093, at *5. The key point that Plaintiffs continue to ignore is that regardless of the fact that Pino individually had prior insurance coverage, APA—the named insured on the Utica policies—did not. There is no evidence in the record to the contrary. Indeed, Pino's testimony only clarifies that Plaintiffs sought insurance coverage from Utica because NAPA/Scottsdale had insured Pino individually. (Pls.' Summ. J. Mem. at 4; Pls.' SOF ¶ 7; Pino Dep. at 33, 63, 73-74.)

Plaintiffs next argue that APA is entitled to coverage because of Plaintiffs' reasonable

4

expectations of prior acts coverage. (Pls.' Mot. for Recons. at 5.) For APA to receive prior acts coverage, the Court would have to ignore the retroactive date and its effect, which is clearly stated in the Utica policies, the coverage proposals and the terms and conditions. (Utica Policy, 10/15/2009 to 10/15/2010; Utica Policy, 10/15/2010 to 10/15/2011; Def.'s Mot. Ex. F [Utica Coverage Proposal, 10/9/2009]; Def.'s Mot. Ex. G [Utica Coverage Proposal, 8/10/2010]; Def.'s Mot. Ex. H [Utica Terms and Conditions, 10/9/2009]; Def.'s Mot. Ex. I [Utica Terms and Conditions, 8/10/2010].) Plaintiffs contend that the Court must do so, either based on Plaintiffs' reasonable expectations that the Utica policy would provide prior acts coverage or because of Utica's unilateral mistake in issuing a policy that did not provide the coverage Plaintiffs requested. (Pls.' Mot. for Recons. at 5-12.)

Plaintiffs argue that the reasonable expectations doctrine should control in this case. Because Pino "was assured that he would have prior acts coverage" and "there was never any discussion of retroactive dates," Plaintiffs contend that there is a genuine issue of material fact that precludes summary judgment. (Pls.' Mot. for Recons. at 7.) However, the Court concluded that, even assuming that Pino genuinely believed that Plaintiffs would have prior acts coverage, any expectation of prior acts coverage—given APA's ineligibility for coverage and the clear, unambiguous, and conspicuous language in the policy precluding such coverage—is "patently unreasonable." *A.P. Pino & Assocs.*, 2012 WL 2567093, at *5. Plaintiffs assert that under Pennsylvania law, "an insured's reasonable expectations control even where the policy language is unambiguous."(Pls.' Mot. for Recons. at 7.) However, the reasonable expectations doctrine is to be applied "in very limited circumstances to protect non-commercial insureds from policy terms not readily apparent and from insurer deception. Absent sufficient justification, however, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous." *Liberty Mut. Ins.*

*Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 n.8 (Pa. 1999) and *Frain v. Keystone Ins. Co.*, 640 A.2d 1352, 1354 (Pa. Super. Ct. 1994)) (internal quotation marks omitted). The Court was presented with no evidence of insurer deception, and the policy terms were readily apparent. Plaintiffs' dispute with the Court's finding that Pino was not an "unsophisticated non-commercial insured[]" because he sells "life insurance, not liability insurance" lacks merit. Pino was securing insurance coverage on behalf of a commercial agency, and as an insurance agent, he regularly deals with insurance policies. The retroactive date language and its meaning are clear and unambiguous, and there is no sufficient justification for Plaintiffs to avoid its effect. Thus, the reasonable expectations doctrine does not create any obligation on Utica to provide coverage to Plaintiffs for the underlying action.

Plaintiffs also argue for reformation of the Utica policies because "Utica issued a policy that did not provide the coverage that Mr. Pino requested." (Pls.' Mot for Recons. at 11.) Plaintiffs contend that "[d]espite knowledge of all of the pertinent information and without any explanation to Mr. Pino, [Utica] caused a policy to be issued that did not provide the coverage that Mr. Pino requested." (Pls.' Mot. for Recons. at 12.) To support their argument, Plaintiffs rely on *Line Lexington Lumber & Millwork Co. v. Pennsylvania Publishing Corp.*, 301 A.2d 684 (Pa. 1973). However, "[t]hat case stands for the proposition that where the agent is advised of the desired coverage and risk he may not disavow coverage by alleging mistake." *PC Specialities, Inc. v. State Auto Mut. Ins. Co.*, Civ. A. No. 97-2189, 1997 WL 330371, at *2 n.1 (E.D. Pa. June 9, 1997). Here, there is no evidence in the record of Utica disavowing coverage by alleging mistake. There was no mistake on Utica's part by "provid[ing] APA with a retroactive date," given "APA's lack of evidence of any prior insurance coverage." *A.P. Pino & Assocs.*, 2012 WL 2567093, at *7. *Line Lexington*

6

recognized the long-standing view in Pennsylvania that reformation of a contract can be justified based on mutual mistake or "mistake by one party, and knowledge of the mistake by the other." *Line Lexington*, 301 A.2d at 687; *see also Alderfer v. Pendergraft*, 448 A.2d 601, 604 (Pa. Super. Ct. 1982) (noting reformation is justified "where there is an error in or an omission from the writing as a result of fraud, accident or mutual mistake . . . [or] if the mistake is unilateral but the other party knows of the mistake"). There was no mutual mistake or unilateral mistake on the part of Utica here. The Court also recognized that "[w]hile Plaintiffs may have been unilaterally mistaken that APA would receive prior acts coverage, Plaintiffs have not presented a scintilla of evidence that Utica engaged in either active fraud or had good reason to know of Plaintiffs' unilateral mistake, thereby precluding reformation of the policy." *A.P. Pino & Assocs.*, 2012 WL 2567093, at *7. Though Plaintiffs now contend that "there may have been conflicting evidence as to what was discussed" by the parties prior to entering into the agreement (Pls.' Mot. for Recons. at 12), Plaintiffs have failed to come forward with evidence that Utica engaged in fraud or had good reason to know of Plaintiffs' mistaken view that the policy included prior acts coverage. *See McFadden v. Am. Oil Co.*, 257 A.2d 283, 288 (Pa. Super. Ct. 1969) ("Generally if a mistake is not mutual, but unilateral, and is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, it affords no basis for relief.").

**IV.    CONCLUSION**

The moving party has a difficult burden on a motion for reconsideration. Here, Plaintiffs have not presented any new evidence or change in controlling law. Furthermore, they have failed to demonstrate that the Court committed a clear error of law or fact. Therefore, the Court will deny

Plaintiffs' motion for reconsideration. An appropriate Order will be docketed separately.